UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT DEREK LURCH, JR.,

                    Plaintiff,

        v.                                9:19-CV-895
                                              (DNH/DJS)

DR. CHARLES BUI, OFFICER
KASEY SHORT, SERGEANT
AARON JONES, SERGEANT
BRUCE BANKER, SERGEANT
JEREMY BURNS, and SERGEANT
MANDY ROTH,

                    Defendants.
_____

APPEARANCES:                          OF COUNSEL:

ROBERT DEREK LURCH, JR.
Plaintiff, Pro Se
9801900620
Vernon C. Bain Center (VCBC)
1 Halleck Street
Bronx, NY 10474

DAVID N. HURD
United States District Judge

## DECISION AND ORDER

### I. INTRODUCTION

      Pro se plaintiff Robert Derek Lurch, Jr. ("Lurch" or "plaintiff") commenced this civil rights action in the Southern District of New York in October of 2018, asserting claims arising out of his confinement at Mid-State Correctional Facility and Fishkill Correctional Facility. *See generally* Dkt. No. 2 ("Compl."). By Order entered May 17, 2019, the Honorable Colleen McMahon of the Southern District of New York granted plaintiff's

application to proceed in forma pauperis. Dkt. No. 8.

On May 22, 2019, the Honorable Nelson Stephen Roman of the Southern District of New York issued an Order directing "the Attorney General of the State of New York, who is the attorney for and agent of DOCCS, [to] ascertain the identities of each of the defendants whom Plaintiff seeks to sue here, the defendants' badge numbers (if applicable), and the address where each of them may be served" and "provide this information to Plaintiff and the Court within sixty days. . . ." Dkt. No. 10 ("May 2019 Order").

Thereafter, and in lieu of complying with this Order, an attorney from the New York Attorney General's Office filed a motion to change venue, which was granted on July 16, 2019. *See* Dkt. No. 13. This action was then transferred to the Northern District of New York on July 24, 2019. Dkt. No. 14.

On August 7, 2019, the Honorable Daniel J. Stewart issued an Order directing the Clerk to send copies of the May 2019 Order and the docket sheet to the New York State Attorney General's Office, and instructing the New York State Attorney General's Office to comply with the May 2019 Order within thirty (30) days. *See* Dkt. No. 15 ("August 2019 Order"). In response to the August 2019 Order, the New York State Attorney General's Office filed a Status Report in an effort to assist Lurch in identifying the defendants sued in this case. *See* Dkt. No. 17 ("Status Report").

On September 17, 2019, the Honorable Daniel J. Stewart issued an Order directing Lurch to review the Status Report and prepare an amended complaint within thirty (30) days, substituting each named defendant in place of the appropriate unidentified defendant, to the extent that plaintiff was able to do so based on the Status Report. *See* Dkt. No. 18 ("September 2019 Order").

However, Lurch failed to timely comply with the September 2019 Order. As a result, by Decision and Order issued on October 30, 2019, this Court granted plaintiff an additional thirty (30) days in which to submit an amended complaint in accordance with the September 2019 Order, and advised plaintiff that his failure to do so would result in the dismissal of the action without prejudice, without further Order of the Court. Dkt. No. 20 ("October 2019 Order").

Lurch failed to timely comply with the October 2019 Order. Instead, on December 23, 2019, plaintiff filed a notice of change of address, along with a letter motion wherein he (1) advised the Court that he attempted to timely comply with the October 2019 Order, but was prevented from doing so as a result of unidentified corrections officials interfering with his mail, and (2) requested copies of the Status Report and original complaint. Dkt. No. 21 ("Change of Address"); Dkt. No. 22 ("Letter Motion").

Thereafter, the Court entered two separate Orders extending Lurch's deadline to comply with the October 2019 Order. Dkt. Nos. 23, 25. Presently before the Court is plaintiff's amended complaint. Dkt. No. 26 ("Am. Compl.").

## II. **SUFFICIENCY OF THE AMENDED COMPLAINT**

### A. **Governing Legal Standard**

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B).¹  Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis.  *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).

Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough

---

¹ To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

### B. Summary of the Amended Complaint

In his amended complaint, Lurch asserts claims arising out of his confinement at Mid-State Correctional Facility ("Mid-State C.F.") and Fishkill Correctional Facility ("Fishkill C.F."). *See generally* Am. Compl. The following facts are set forth as alleged by plaintiff in his amended complaint.[2]

In 2009, Lurch was "diagnosed with bipolar disorder" and prescribed medication to

---

[2] Plaintiff has attached exhibits to his amended complaint, which the Court has also considered as part of its sufficiency review herein.

"deal with [his] mental illness." Am. Compl. at 15. In 2015, plaintiff was placed in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *Id.* In July of 2017, plaintiff was incarcerated at Mid-State C.F., and working as a porter. *Id.* at 9.

On July 17, 2017, Lurch left his housing area to report to work at the infirmary. Am. Compl. at 9. That day, it was "pouring rain." *Id.* When plaintiff entered the infirmary from the outdoors, his clothing was wet. *Id.* Upon seeing plaintiff, the infirmary officer (not a party) "informed [plaintiff] that [he] could go back to [his] housing area because [he] would not be able to perform [his] work detail soaking wet." Am. Compl. at 9. As plaintiff exited the building, the desk officer, defendant Short, ordered him to pull up his pants. *Id.*[3] Plaintiff attempted to comply with the order, but not to defendant Short's satisfaction. *Id.*

Defendant Short ordered Lurch to "get up against the wall in the search position." Am. Compl. at 9-10. Defendant Short then approached plaintiff with another officer and ordered him to spread his feet while "kicking [his] legs apart forcefully." *Id.* at 10. Defendant Short then choked plaintiff while he was in the search position for twenty to thirty seconds before letting go, after which he ordered plaintiff to return to his housing area. *Id.* Defendants Corrections Sergeant Banker and Corrections Sergeant Jones were both present and witnessed defendant Short use force on plaintiff. *Id.* at 10, 13-14.[4]

On March 18, 2018, Lurch was housed in a "program dorm" with other inmates, where he was "attacked from behind and rendered unconscious[.]" Am. Compl. at 16. After plaintiff

---

[3] The original complaint identified this defendant as Officer John Doe #1. Compl. at 3.

[4] The original complained identified these defendants as Lieutenant or Sergeant #1 and Lieutenant or Sergeant #2. Compl. at 4.

regained consciousness, he "walked to [his] assigned bed and went to sleep." *Id.*

On March 22, 2018, Lurch was stopped by defendant Corrections Sergeant Burns and defendant Corrections Sergeant Roth and questioned about the injuries on his face. Am. Compl. at 16.[5] Before plaintiff could respond, one of the officials informed plaintiff that an inmate already notified them that plaintiff had been attacked by gang members, and that they knew he was not safe in his housing unit. *Id.* Plaintiff was then asked if he felt safe in general population. *Id.* Plaintiff indicated that he did not, and would like to be transferred to another facility. *Id.*

Defendants Burns and Roth told Lurch that if he provided the names of the inmates who attacked him, they would consider placing him in protective custody or relocating him to another facility. Am. Compl. at 16. Plaintiff responded that he did not know the identity of his attackers. *Id.* at 16-17. Defendants Burns and Roth advised plaintiff that because he was not able to provide them with any information, they intended to relocate the "suspected gang member" who they thought was responsible for the attack to another housing unit. *Id.* at 17.

Lurch explained that relocating the suspected attacker would "place [him] in further danger" because the inmates remaining in the housing area would think plaintiff "implicated" the suspected attacker. Am. Compl. at 17. Defendants Burns and Roth advised that there was nothing more they could do without further information from plaintiff. *Id.*

Thereafter, Lurch "was attacked numerous times . . . in the same dorm[.]" Am. Compl. at 17. Following the "last attack[,] [plaintiff] was removed from the housing unit because [defendants Burns and Roth] claimed [he] was the aggressor" even though he was not. *Id.*

---

[5] The original complaint identified these defendants as a "Caucasian Female" Sergeant and Sergeant One. Compl. at 3, 17-20.

7

On April 19, 2018, Lurch was "attacked by unknown assailants[,]" during which time he sustained "numerous injuries[.]" Am. Compl. at 11. Following the assault, plaintiff was taken to the infirmary and informed by a medical professional that he sustained a broken tooth. *Id.*

Thereafter, Lurch was referred to, and seen by, the facility Dentist, defendant Dr. Bui. Am. Compl. at 11.[6] Dr. Bui informed plaintiff that he had a "broken molar" and that he would "receive penicillin for the . . . abcess [sic] and . . . ibuprofen for . . . pain[.]" *Id.* Dr. Bui then stated that he would schedule plaintiff for an extraction in one week, and that plaintiff would "experience pain when brushing and chewing" until the tooth was removed. *Id.*

A month later, Lurch still had not been scheduled for a tooth extraction. Am. Compl. at 11. Plaintiff "submitted a dental request form reminding NYSDOCCS dental personnel that [he] needed to have the extraction procedure." *Id.*

In or around July of 2017, Lurch submitted a sick call slip to either defendant Nurse Magdalah Plaisime or defendant Nurse Jean Day wherein he indicated that he still had not received treatment for his broken tooth. Am. Compl. at 11-12.[7] Around the same time, plaintiff submitted a separate sick call slip to either defendant Nurse Magdalah Plaisime or defendant Nurse Jean Day wherein he complained about a "fungus growth that suddenly appeared on the back of [his] right thigh." *Id.* at 7. Plaintiff was never seen by any members of medical staff at Mid-State C.F. regarding his complaints. *Id.* at 7, 12.

On July 26, 2018, Lurch was transferred to Fishkill C.F. Am. Compl. at 7, 12. Upon

---

[6] The original complaint identified this defendant as the "Dentist [ ] who examined [plaintiff] . . . on April 19, 2018[.]" Compl. at 5.

[7] The original complained named as a defendant the "Nurse who receives sick call slips and schedules appointments . . . at Mid-State Correctional Facility." Compl. at 5-6.

8

arriving at Fishkill C.F., plaintiff continued to submit sick call slips and grievances regarding his broken tooth and fungus. *Id.* at 7, 12.

As a result of not receiving treatment for the "fungus," it began spreading to other parts of Lurch's body. Am. Compl. at 7. Roughly three and a half weeks after plaintiff arrived at Fishkill C.F., he spoke with defendant Nurse Berry about his medical condition.[8] Defendant Berry declined to treat plaintiff at that time. *Id.* at 8. Approximately one week later, an unidentified nurse gave plaintiff an anti-fungal cream. *Id.* However, plaintiff's condition did not improve. *Id.*

Construed liberally, Lurch asserts the following claims with respect to alleged wrongdoing that occurred during his incarceration at Mid-State C.F.: (1) Eighth Amendment medical indifference claims against defendants Plaisime, Day, and Dr. Bui; (2) Eighth Amendment excessive force and failure-to-intervene claims against defendants Short, Banker, and Jones based on the alleged use of force incident on July 17, 2017; and (3) Eighth Amendment failure-to-protect claims against defendants Burns and Rother.[9]

Lurch seeks monetary relief. Am. Compl. at 20. For a complete statement of plaintiff's claims, reference is made to the amended complaint.[10]

---

[8] The original complaint named this defendant as the "Nurse who receives sick call slips and schedules appointments . . . at Fishkill Correctional Facility." Compl. at 6.

[9] As noted below in Section II.C, plaintiff's claim against defendant Berry, which arises out of his confinement at Fishkill C.F., will be transferred to the Southern District of New York.

[10] The Clerk shall revise the docket as follows: (1) substitute Officer Kasey Short for Officer John Doe #1; (2) substitute Corrections Sergeant Aaron Jones for Lieutenant or Sergeant #1; (3) substitute Corrections Sergeant Bruce Banker for Lieutenant or Sergeant #2; (4) substitute Corrections Sergeant Jeremy Burns for Sergeant One; (5) substitute Corrections Sergeant Mandy Roth for the "Caucasian Female" Sergeant; (6) substitute Dr. Charles Bui for Dentist; (7) substitute Magdalah Plaisime and Jean Day for the "Nurse who receives sick call slips and schedules appointments . . . at Mid-State Correctional Facility"; and (8) substitute Margaret Berry for the "Nurse who receives sick call slips and schedules appointments . . . at Fishkill Correctional Facility."

**C. Severance and Transfer of Claim Arising Out of Fishkill C.F.**

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against a party and proceed with that claim separately. Fed. R. Civ. P. 21. In deciding whether to sever a claim, the Court should consider the following:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y. 1986). "A decision to sever lies within the discretion of the Court." *Id.* at 225.

Lurch's claim arising out of his confinement at Fishkill C.F. is more appropriately heard in the Southern District of New York ("Southern District"), where that facility is located. The allegations pertaining to Fishkill C.F. involve a different defendant than the allegations pertaining to Mid-State C.F., and, although plaintiff may assert similar legal theories in support of some of his claims arising out of both locations, the witnesses and documentary proof will be distinct. In addition, the Court is sensitive to the burden, upon both the

individuals and the taxpayers of the State of New York, of requiring an individual who is employed and most likely resides in the Southern District to travel to the Northern District to defend against allegations that occurred in the Southern District.

For the foregoing reasons, Lurch's claim arising out of alleged wrongdoing that occurred at Fishkill C.F., and the named defendant against whom those claim is asserted, are severed from this amended complaint and venue of the claim and defendant against whom it is asserted is transferred to the Southern District in the interests of justice and judicial efficiency. The Court makes no ruling as to the sufficiency of the claim asserted against the named defendant from Fishkill C.F., thereby leaving that determination to the Southern District of New York.

### D. Analysis of Claims Arising Out of Mid-State C.F.

Lurch asserts claims pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).

"Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

#### 1. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment

11

afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

12

At this early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Lurch's Eighth Amendment medical indifference claim against defendant Bui survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

However, Lurch's Eighth Amendment claim against defendants Plaisime and Day do not survive review at this time. Insofar as plaintiff's claim against these officials relates to his broken tooth, the amended complaint alleges only that plaintiff submitted a "dental request form" roughly one month after he suffered a broken tooth on April 19, 2018, and "a couple months" later submitted a sick call slip "notifying dental personnel that [he] still ha[d] not been treated." Am. Compl. at 11-12.

The amended complaint does not expressly identify (or describe) the official(s) to whom Lurch delivered either or both of these requests, or provide the dates when the requests were delivered. Thus, the Court has no basis to plausibly infer from plaintiff's conclusory allegations that either defendant Plaisime or defendant Day received plaintiff's "dental request form" or "sick call slip" regarding his broken tooth, or were otherwise aware that plaintiff was suffering from complications as a result of his broken tooth.

Furthermore, even assuming one of these officials received Lurch's written request for dental treatment, the amended complaint is devoid of any allegations which plausibly suggest that either of them chose not to deliver the request to "dental personnel" despite knowing that doing so would cause plaintiff continued pain and suffering. Indeed, the Court has no basis to infer from the allegations in the amended complaint that the requests were not delivered to

13

"dental personnel," who were notably already aware of the alleged need for a tooth extraction based on plaintiff's own allegations. Thus, the amended complaint fails to adequately plead that either defendant Plaisime or defendant Day acted with the requisite deliberate indifference to plaintiff's serious dental needs.

Insofar as Lurch's Eighth Amendment claim against defendants Plaisime and Day relates to his "fungus growth," the amended complaint does not describe the fungus in any detail, either in terms of physical characteristics or in terms of its effect on plaintiff, during the time period that plaintiff was incarcerated at Mid-State C.F. Nor does the amended complaint contain any allegations which plausibly suggest that the "fungus growth" worsened during plaintiff's confinement at Mid-State C.F.

Under such circumstances, the Court has no basis to plausibly infer that the "fungus growth" on Lurch's thigh constituted a "serious medical condition" during the time period that plaintiff was confined at Mid-State C.F. *White v. Marinelli*, No. 9:17-CV-1094 (LEK/ATB), 2019 WL 1090802, at *17 (N.D.N.Y. Mar. 8, 2019) ("Plaintiff also alleges that Baker ignored conditions in May and June, which may refer to Plaintiff's facial acne, a rash on his thigh, and/or a foot fungus. . . . However, he points to no allegations in the Amended Complaint that would show that his acne, rash, or fungus constituted serious medical conditions, as required to support an Eighth Amendment violation. . . . The facts do not indicate that they were conditions of urgency that may result in degeneration or extreme pain, meaning that they do not state an Eighth Amendment claim." (internal quotation marks and citations omitted)).

Even assuming that the "fungus growth" was sufficiently serious, the amended complaint lacks allegations which plausibly suggest that either defendant Plaisime or

14

defendant Day acted with deliberate indifference to Lurch's serious medical needs on this issue. Rather, the amended complaint alleges only that some time between July 7 and 10, 2018, plaintiff submitted a sick call request to one of these defendants based on his concern about the growth, which "suddenly appeared on the back of [his] right thigh," and that he thereafter verbally expressed concern to an unidentified nurse, who advised him that if he submitted a sick call request, it would be addressed. Am. Compl. at 7.

Lurch does not allege that his sick call request was presented as an emergency, that he filed subsequent sick call requests or a grievance based on the failure to address the initial request, or that he otherwise communicated to defendants Plaisime or Day that the alleged "fungal growth" was spreading or causing complications. Thus, at most, the allegations in the amended complaint plausibly suggest that either defendant Plaisime or defendant Day failed to address a single non-emergency sick call request filed by plaintiff. In the absence of further allegations, such inaction amounts to, at most, negligence. *See Dorsey v. Fisher*, No. 9:09-CV-1011 (GLS/DEP), 2010 WL 2008966, at \*10 (N.D.N.Y. May 19, 2010) ("Dorsey's conclusory allegation that an unidentified Medication Nurse and escort correctional officer refused Dorsey access to emergency sick call on one occasion fails to state a claim upon which relief may be granted under the Eighth Amendment" (citing *Brown v. Sheridan*, 894 F. Supp. 66, 71 (N.D.N.Y. 1995) ("[O]ne isolated failure to provide medical treatment to a prisoner, without more, is generally not actionable" unless the "surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment.")).

Accordingly, Lurch's medical indifference claims against defendants Plaisime and Day are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim upon which relief may be granted.

## 2. **Excessive Force and Failure-to-Intervene Claims**

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102, 104; *see also Whitley*, 475 U.S. at 319 (citing, *inter alia*, *Estelle*).

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden*, 186 F.3d at 262-63 (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[11]

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 832). Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001);

---

[11] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321-22); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

*see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Lurch's Eighth Amendment excessive force and failure-to-intervene claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. **Failure-to-Protect Claims**

In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." 511 U.S. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id*. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *Hines v. Lacy*, 189 F.3d 460 (2d Cir. 1999).

"Courts have found that, when an inmate informs corrections officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to protect." *Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008); *see also Rogers v. Salius*, No. 16-CV-1299, 2017 WL 1370695, at *4-5 (D. Conn. Apr.

13, 2017) (denying motion to dismiss where plaintiff alleged that prison officials knew of a threat prior to the assault against him); *Henry v. County of Nassau*, No. 13-CV-7427, 2015 WL 2337393, at *4 (E.D.N.Y. May 13, 2015) (denying motion to dismiss as to prison officials "alleged to be personally involved" in the decision to place plaintiff in general population rather than protective custody after credible threats of gang retaliation made against plaintiff).

At this early stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, a response to Lurch's Eighth Amendment failure-to-protect claims is warranted. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### III. CONCLUSION

Therefore, it is

ORDERED that

1. The claims arising out of plaintiff's confinement at Fishkill Correctional Facility are severed and transferred to the Southern District of New York;

2. The Clerk shall advise the Clerk of the Southern District of New York, in writing, of the entry of this Order and provide that Clerk with all information necessary for the Southern District Clerk to electronically access the documents filed in this action;

3. The Clerk shall revise the docket as follows: (1) substitute Officer Kasey Short for Officer John Doe #1; (2) substitute Corrections Sergeant Aaron Jones for Lieutenant or Sergeant #1; (3) substitute Corrections Sergeant Bruce Banker for Lieutenant or Sergeant #2; (4) substitute Corrections Sergeant Jeremy Burns for Sergeant One; (5) substitute Corrections Sergeant Mandy Roth for the "Caucasian Female" Sergeant; (6) substitute Dr. Charles Bui for Dentist; (7) substitute Magdalah Plaisime and Jean Day for the "Nurse who

18

receives sick call slips and schedules appointments . . . at Mid-State Correctional Facility"; and (8) substitute Margaret Berry for the "Nurse who receives sick call slips and schedules appointments . . . at Fishkill Correctional Facility";

    4. The following claims **SURVIVE** the Court's initial review pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and require a response: (1) plaintiff's Eighth Amendment medical indifference claim against defendant Bui; (2) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Short, Jones, and Banker; and (3) plaintiff's Eighth Amendment failure-to-protect claims against defendants Burns and Roth;

    5. Plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted;

    6. Defendants Plaisime, Day, and Berry are **TERMINATED** from this action;

    7. Upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants Bui, Short, Jones, Banker, Burns, and Roth. The Clerk shall forward a copy of the summons and amended complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

    8. A response to the amended complaint be filed by defendants Bui, Short, Jones, Banker, Burns, and Roth, or their counsel, as provided for in the Federal Rules of Civil Procedure;

    9. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District

19

Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

10. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

11. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and

12. The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

Dated: March 10, 2020
       Utica, New York.

_____
United States District Judge